United States of America v. Belia Mendoza. You may proceed. May it please the Court, opposing counsel. Your Honors, our position in this case is that at sentencing there was a complete breakdown in the adversary's system. Ms. Mendoza's counsel at sentencing said a mere 70-some-odd words simply urging the Court to do what it thought was right, something that we could have trusted a U.S. District Judge to do had counsel not even shown up. As discussed in our brief, there was no motion for downward variance, no sentencing memorandum, no urging for a lighter sentence or even a sentence at the bottom of the guideline range, no argument in opposition to the upward departure that occurred. And all of this in the post-Booker world that we live in where, as we cited in our brief, things like first conviction, otherwise good character, excellent behavior while on pretrial supervision, age, 61 years old, poor health, etc., there's throughout the country in the different circuits, there's a long, long list of cases where significant departures based on any one of those factors occurred. Counsel, it is normally our practice to deal with ineffectiveness claims not on direct appeal, and I'm wondering if you believe that you have, is there authority for us dealing with these claims now rather than dealing with them after the appeal as is normally the way we handle those? I understood, Your Honor, and we'd absolutely accept that the more normal or traditional form to deal with these claims is post-conviction habeas corpus litigation, but we'd urge that in this case, the record, this is the rare case where the record is sufficiently developed. I mean, all of the facts that counsel had at his disposal are outlined in the PSR. Counsel's failings are all a matter of record. So, again, we'd urge that this is just the rare case where the record at this point is sufficiently developed so that the court can consider this claim on the merits. Judge, do you have any authority for that in this circuit? I don't want to take too much of your time. Oh, understood. I think we've cited in our brief, on pages 19 and 20, United States v. Brewster and United States v. Thomas, again, for the proposition that there are rare instances where the record is indeed sufficiently developed to where the court can consider these claims at this juncture. So, again, we'd urge that this matter be remanded to the district court where a motion for downward variance can be presented, a sentencing memorandum, advocacy on behalf of Ms. Mendoza at sentencing can occur. The next issue we'd like to address is the upward departure. And we'd urge the court there that on paragraph 61 of the pre-sentence report, well, let me back up. Essentially, the upward departure was based on conduct not charged in the indictment and the district court's observation that the co-defendants would not have engaged in criminal conduct but for my client. So with regard to the uncharged conduct, we would urge that even if every single fraudulent tax return were a separate count in the indictment, whether we'd have hundreds or thousands of counts, we'd urge that the guideline range would be the same because paragraph 61 of the pre-sentence report articulates that the U.S. government sustained a total loss of $840,499. So that total loss amount, which drives the guideline range, was fully, fully accounted for. And the first factor— Well, that was a total documented loss. Isn't that right? I'm not sure you are. I don't recall it being articulated like that. Let me—I've got the PSR before me here. Well, Ms. Mendoza admitted that her conduct occurred for a period of time which extended well beyond what this documented loss reflects. Isn't that correct? Well, paragraph 61 says the U.S. government sustained a total loss. It doesn't say documented loss of 840 and some change. No argument that the conduct went on for years and years and years. My reading of that is— So in your view, all those years of fraud are accounted for with this $840,000 number? That's my position, and it's been my experience that what probation officers do at this point is determine the totality of the loss, whether it's a tax scheme like this one or a Ponzi scheme or some other white-collar fraud. Probation is to account for the totality of the loss. Are you saying this is an actual legal error, or are you saying that, well, gee, on this record, the court shouldn't have imposed this sentence? Well, it's our position, Your Honor, that this is plain error. I mean, the pre-sentence report took into account—again, our position took into account the totality of the loss. So for the court to upward depart on the circumstances, I'd urge a sort of double count. Right. But our case law does not hold that, does it? Do you have a case that would say that it is a double count? I thought, in fact, the case law is to the contrary in similar circumstances. The district court has broad discretion in matters like this. I accept that, Your Honor. Those were the two issues that we wanted to address today, unless the court has any questions. Keep us ahead of schedule. Okay. Thank you, Counsel. Thank you, Your Honor. Good morning. I'm Ellen Lockwood, representing the United States. I'd like to just address those two issues that opposing counsel raised. On the ineffective assistance of counsel, it's clear from the record that perhaps the attorney could have done a little bit more, but it's also clear from the record that the judge considered an awful lot. The attorney did not— So do you agree that we should address the IAC claim on direct appeal? No, Your Honor. I think I'm making my second argument, and I probably went a little bit out of order. It's our position that the court should not address it because the district court hasn't had an affidavit from the attorney. We don't know what kind of strategy he was pursuing. It's very likely that the attorney—there were probably 25, 20-something letters that were submitted on her behalf from members of the public, members of her family, from her grandson. I don't know what part the attorney had in orchestrating or asking for those letters, but all of those letters that addressed her health, the fact that she had been a great member of the community, that her family loved her, that her grandson would miss her, all of those kinds of emotional pleas for the grandmother, who was 61, who had been convicted, was presented to the court. So my alternative argument is if this court does consider it, you just can't say that this attorney was ineffective on this record because there's so much that was presented to the court. Also, on ineffective assistance, should this court consider it, it's clear it didn't affect her substantial rights because the district court said, I have considered all of those letters, and I have looked at all of these different things and what people believe about this woman, but I can't forget the amount of harm she caused. Did the district court—I can't recall that the district court actually addressed her health. That's the only thing that— I don't believe the district court did. That's one of the specific things that they believe was error, and I'm not sure that—saying that it's true, the court mentioned the letters, but I don't remember that the district court addressed the health. I'm not trying—I'm not expressing a viewpoint on that. I'm just noting what did the district court not address that they say should have been addressed. I don't believe the district court specifically talked about her health. What the court did say is, I am bound to consider the 3553 factors and her personal characteristics, and then he talked about those letters and basically rejected the plea for sympathy. The district court seemed to be of the opinion that, based upon hearing the evidence, that she was the ringleader of this very large thing that involved so many people and so much money. Yes, and I think the district court was—and I think that's backed up by the PSR. In the PSR, she said, I ran the business. She admitted that she filed all these false tax returns. She admitted she fabricated Schedule A's, which are the unreimbursed employee expenses. She admitted she manipulated or added amounts to a Schedule C to trigger the earned income credit. She admitted she placed education expenses on returns, knowing that the clients did not have them. She said that she trained her niece, who was an employee. She trained her daughter or stepdaughter, who was an employee. She gave them permission to file false tax returns. One of the witnesses says that she went around from station to station and she would kind of check off and look at the screen and see how the return had been prepared and then okay it. And then those two told the probation officer that they got literally permission to file the false tax returns. So she clearly was in charge. She owned the business. She ran the business. It was in a converted garage. They were in closed quarters. So she really was the one that she trained them. They went to training together. So it's very clear that she was in charge and that she let or permitted this to go on or instructed them how to do it. I'd like to address, too, the upward departure and the loss calculation. I've looked very closely at the PSR and attached to the PSR is a schedule that was prepared by the IRS and it's Exhibits 1, 2, and 3 attached to the final PSR. And what they did is they did a loss calculation. It was based on the convicted counts. It was based on the uncharged counts that were investigated. And it was based in very large part, and I think you'll see there are probably about 400 returns where the educational expenses were inflated. And they were able to do that because when you go to college and you incur tuition expenses, you get a Form 1098-T. So they could match that return and see if there was a 1098-T that had been filed by the educational institution. So in other words, they could very easily catch the fraud on educational expenses. Where they can't easily catch and document the fraud on all these uncharged cases is where you have an inflated business expense or where you have a false medical expense. Because what that requires is it requires the IRS to go and actually investigate that and document that. With these educational expenses, they could do it really almost by computer just like you would match a W-2 with the income on the return. So I guess my point is she confessed. She told the agents that some of her clients were exotic dancers. And what she did is she would take their Schedule C and she would sometimes inflate the income so they would be able to get the earned income credit. And sometimes she would decrease it so that they would qualify for the earned income credit. She told the agents she had 100 to 200 of these clients and that was her scheme. But those aren't included. Those 100 to 200 aren't included in this loss calculation. And I think that's what the judge really understood that there are all these returns out there during this period where there is just a huge loss to the government. Counsel, let me ask you about counts 3 and 6, I think related to taxpayer Angel Gillen. Yes, Your Honor. Where the government concedes that the evidence was insufficient to support the verdict on those counts. Yes, Your Honor. Do we need to vacate and remand for resentencing in connection with that? Yes, Your Honor. You need to vacate the conviction and the sentence. I was hoping that perhaps the court could reform the judgment. And that was the upshot of my question. Could we reform the judgment or do we need to vacate and remand for the district court to do that? Your Honor, I believe you could reform. I guess the question really is, you know, the judge based his sentence on the five substantive convictions and the conspiracy. I believe the evidence indicates the judge will give the very same sentence regardless of losing these two counts. But that's really probably a decision for this court to make as to whether it's better for the district court to resentence or for this court to just reform the judgment. And in that connection, my question is what authority is there for us to just reform the judgment rather than vacate and remand? Your Honor, I don't have that in my brief and I'm not, I know that it's been done before where the sentence, because it was grouped and he imposed 36 on each count, each one of the 36, I'm sorry, three years on each one of those five counts, then, and they were to run concurrently, it seems that that sentence would not change and so that it would just be a matter of reforming the judgment. But, you know, really it's a matter for this court really to choose whatever way they wish to, you know, wish to do it. In other cases where this issue has come up recently, opposing counsel, the counsel for the appellant has argued that it's not appropriate for us to just reform the judgment because it doesn't get reflected in the actual copy of the judgment and that people get confused about the convicted counts. And this has impacted people in immigration circumstances and things because this doesn't, our opinion doesn't always get carried with the judgment, if that makes sense. It's a paperwork issue. Do you have any comment on that? I think it would probably be clearer if the district court did it. I do think that's true because, you know, she is, we agree that she, the conviction on counts three and six should not stand. And so whatever needs to be done to make that clear to governments, we don't oppose a remand. Is there anything else the court would like me to address? I think we have your argument. Thank you. Thank you. Nothing further. Thank you, counsel. Thank you, Your Honor. This case is submitted. Thank you.